**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donald FOUST, Defendant-Appellant.**

**No. 71–1420.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 27, 1972.

Decided June 2, 1972.

James Manahan, Indianapolis, Ind., for defendant-appellant.

Stanley B. Miller, U. S. Atty., William Andrew Kerr, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Following a bench trial in the United States District Court for the Southern District of Indiana the defendant, Donald Foust, was found guilty of having uttered a forged government check in violation of 18 U.S.C. § 495. A sentence of one year in prison was imposed upon the defendant. The only issue raised by the defendant in this appeal concerns the district judge's denial of the defendant's motion to suppress evidence. The defendant maintains that the government check and a subsequent confession of his, both of which were admitted into evidence against him, were the "fruits" of an unconstitutional search and seizure and thus should have been suppressed.

Although not entirely free from ambiguity, the record shows that on November 7, 1969 Robert Lloyd, an Indiana peace officer then working as a security guard at Arsenal Tech High School in Indianapolis, Indiana, observed the defendant in the school's cafeteria. The officer immediately concluded that the defendant was not a student but was a stranger to the campus. Since it was the officer's duty to determine whether visitors had a campus pass, as required by the school, he approached the defendant. The officer was then informed by the defendant that he was searching for his nephew, a "Henry Foust." The defendant was asked by the officer to accompany him to the principal's office to see if the nephew could be located. The officer testified that as of this time he had become suspicious of the defendant because the defendant was a stranger who did not possess a campus pass and because the defendant, who was then nineteen years of age, had an envelope commonly used to transport government checks protruding from the outside pocket of his coat. Although the officer could not see the contents of the envelope, he stated that its possession by the

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

defendant aroused his suspicions because it would be unusual for a person of the defendant's age to have a government check in his possession. At this time the officer decided that he should examine the check but he said nothing to the defendant concerning his intention.

Upon arriving at the principal's office, the officer checked the school records and found that no one by the name of Henry Foust was registered as a student. The sequence of the events that followed is not clear from the record. It appears, however, that the officer then asked the defendant to produce some identification and at approximately the same time directed the defendant to empty his pockets onto a nearby table. The defendant then removed the contents of his pockets, including the check envelope and three pieces of identification, and placed them on the table. The officer first examined the items of identification and found that the name appearing thereon did not correspond with that of the alleged nephew. While the defendant continued to empty his pockets, the officer picked up the envelope from the table, and discovered that it contained a government check which bore a name different from that appearing on the identification. The defendant was then asked his name and he responded with a name which did not correspond to his identification. The officer then called a telephone number claimed by the defendant to be his, but the person answering stated that no one by the name of Foust resided there. In response to the officer's inquiry as to the true ownership of the check the defendant stated that it belonged to his father. The officer then formally placed the defendant under arrest.

Relying principally on Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 and Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917, the defendant claims that he was subjected to a search or a frisk which transgressed the limitations of the Fourth Amendment. The government, on the other hand, contends that the security officer's conduct in questioning the defendant was "reasonable" and did not violate the Fourth Amendment's prohibition of unreasonable searches and seizures. Indeed the government states that no search or frisk occurred here. Rather the defendant is claimed to have "volunteered" the envelope and the check to the officer.

■ We are not persuaded by the government contention that the defendant was not subjected to a search. We observe first that the contents of the envelope which aroused the officer's suspicion in the first instance were not within his unobstructed or plain view. He had to examine the envelope in order to ascertain its contents. This seems to us to represent the classical type of prying into hidden places which constitutes a search. See United States v. Haden, 397 F.2d 460, 465 (7th Cir. 1968).

■ We must also reject the government's related theory that the defendant "volunteered" the check to the security officer No matter how the record is viewed the element of implied coercion was present. The defendant produced the incriminating material in response to the officer's directions. The defendant was dispossessed of the check; he did not freely and willingly tender it to the officer. See Coolidge v. New Hampshire, 403 U.S. 443, 484–490, 91 S.Ct. 2022, 29 L.Ed.2d 564.

■ We now must consider whether the officer's search of the defendant transgressed the limitations of the Fourth Amendment. After Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917, it is of course clear that the restrictions of the Fourth Amendment apply to the investigatory stages of police conduct. See also Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676. The basic constitutional rule within this area is that searches conducted outside the scrutiny of the judicial process, that is, without a warrant, are *per se* unreasonable under the Fourth Amendment un-

less they fall within one of the well delineated exceptions to this rule. Coolidge v. New Hampshire, 403 U.S. 443, 444–445, 91 S.Ct. 2022, 29 L.Ed.2d 564. None of the recognized exceptions are even claimed to have been present here. The government does not contend, for example, that the search here was incidental to a lawful arrest, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, or that the search was necessary for the protection of the officer, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. We conclude therefore that the search here violated the constitutional rights of the defendant and that his motion to suppress the check and the subsequent confession as fruits of the unconstitutional search and seizure should have been granted. See Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

Accordingly the judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.