**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kirk BAKER et al., Defendants-
Appellants.**

**Nos. 73-1440–73-1443.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1974.

Decided July 9, 1974.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before SWYGERT, Chief Judge, STEVENS and SPRECHER, Circuit Judges.

SWYGERT, Chief Judge.

Defendants were charged and convicted after a jury trial of violating 21 U.S.C. § 846 [1] by conspiring to distribute sodium secobarbital, a controlled substance, in violation of 21 U.S.C. § 841(a)(1).[2] Rick Felts was sentenced to imprisonment for four years, Kirk Baker to three years, Vera Felts to two years, and Ralph Vela to one year. All have appealed. Defendants raise five contentions on appeal.

## I

Each of the defendants contends that there was insufficient evidence to support a finding of guilty. The evidence viewed in the light most favorable to the Government establishes the following. Joseph Hale, a Government informer working for the Bureau of Narcotics and Dangerous Drugs in Fort Wayne, Indiana, was making his daily report by telephone to Special Agent Melvin O. Schabilion when Rick Felts initiated a conversation with Hale in which he offered to obtain and sell to Hale 50,000 "reds" (sodium secobarbital pills). Hale expressed interest, and they proceeded to an apartment at which Ralph Vela was present. Although the United States Attorney states in his brief that all three "discussed the purchase and the dealing in narcotics and dangerous drugs in general," there is no evidence that Vela participated in the discussion. The evidence merely shows that Vela was present (he lived there) and engaged in small talk. The next evening Hale returned to the apartment with Schabilion and introduced him to Rick

Timothy J. Connor, Stephen H. Shambaugh, Fort Wayne, Ind., for defendants-appellants.

1. 21 U.S.C. § 846 provides:
   Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. 21 U.S.C. § 841(a)(1) provides:
   [T]o manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;
   . . .

Felts and Vela. Felts told Hale and Schabilion that he would like them to go with him to the Ely Motel and meet his partner, Kirk Baker, who could obtain the 50,000 pills. There is no evidence that Vela participated in this second conversation, in fact, the evidence shows that he was seated with five to ten other people in an adjoining room of the apartment.

Rick Felts, Hale, and Schabilion left and met Baker at the Ely Motel where Baker stated that he would be able to get the 50,000 pills and that he would obtain a sample for them the next day. Later that evening, unindicted co-conspirators Allen Burns and Kathy Perriguey arrived and Burns advised the earlier group that he could obtain a sample of 1000 pills. Burns, Perriguey, and Baker left and returned with a bag of about 100 "reds." Burns took fifteen pills out of the bag and sold them to Schabilion for $5.00. Baker then said that he could obtain 1000 "reds."

On the following day, Vela drove Rick Felts and a man named Hans to Hale's motel room at the Holiday Inn where Schabilion was already present. Schabilion paid Rick Felts $150 for 500 "reds." There was no evidence that Vela participated in either the conversation or the transaction. After the sale Vela, Rick Felts, and Hans left in a car again driven by Vela.

Later the same day, Rick Felts returned with his wife, Vera, and a woman named Debbie. Vera Felts advised Hale and Schabilion that the 500 pills sold to them earlier in the day had come through her from a man named Steve and that she was negotiating for the purchase of 50,000 pills. Rick Felts told Hale and Schabilion that his wife would meet Steve that evening to determine a reasonable price and then meet Hale and Schabilion at the Zig Zag Club. Vera and Rick Felts met with Hale and Schabilion at the Zig Zag Club. Vera told them that she had met her supplier and that the deal could go through in a couple of days. The deal was never con-summated because Schabilion could not get the authority to make the purchase.

Defendants rely on dicta in United States v. Hysohion, 448 F.2d 343, 347 (2d Cir. 1971), to the effect that the telling of a willing buyer of heroin how to make contact with a willing seller does not necessarily imply an agreement between the seller and the information giver. Regardless of how we would decide that issue, the facts are different here. The evidence showed (1) that Rick Felts told the Government agents that Baker was his partner and (2) that his wife said that the 500 pills purchased from her husband had been obtained by her. There was sufficient evidence for the jury to find that Rick and Vera Felts and Kirk Baker conspired to distribute sodium secobarbital.

Defendants also argue that the evidence at best showed a series of conspiracies and not the conspiracy as charged in the indictment. We disagree. The evidence establishes one conspiracy by the Felts and Baker to sell sodium secobarbital pills to Hale and Schabilion.

We turn next to the sufficiency of the evidence as it relates to Vela. The only evidence of participation in the conspiracy on the part of this defendant was his driving of Rick Felts and Hans to the Holiday Inn where Rick Felts sold 500 pills. The Government argues that since Vela lived at Rick Felts' apartment, since he was present during the first conversation with Rick Felts at the apartment, and since he drove Rick Felts and Hans to the Holiday Inn and was present when Rick Felts sold 500 pills, he participated in the conspiracy. The testimony of Hale about this first conversation, however, was that Vela engaged only in "small talk" and did not participate in the conversation on drug dealing. At the time of the second conversation at the apartment when Schabilion was also present, Vela was sitting in the next room with five to ten other persons. Allen Burns, unindicted co-conspirator, testified at trial for the Government that he had no knowledge of

Vela being connected with the conspiracy. The United States Attorney at oral argument admitted that without Vela's driving of the car, there would be insufficient evidence to convict him.

■ We have previously said with respect to the crime of conspiracy in United States v. Hickey, 360 F.2d 127, 138 (7th Cir.), cert. denied, 385 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966):

> A conspirator need not participate in all the activities of the conspiracy, nor is it necessary that he become a member of the conspiracy at its inception. United States v. Lipsky, 309 F.2d 521, 522 (3d Cir. 1962), cert. denied, 371 U.S. 953, 83 S.Ct. 510, 9 L.Ed.2d 501 (1963). It is only necessary that he knowingly contribute his efforts in furtherance of it. McManaman v. United States, 327 F.2d 21, 25 (10th Cir.), cert. denied, 377 U.S. 945, 84 S. Ct. 1351, 12 L.Ed.2d 307 (1964).

The United States Attorney at oral argument argued that Vela "shouldn't associate with these people." The answer is supplied by the Second Circuit: "But mere association with conspirators is insufficient basis for a finding of participation." United States v. Stromberg, 268 F.2d 256, 267 (2d Cir.), cert. denied, 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959). *See also* United States v. Di Re, 332 U.S. 581, 593, 68 S.Ct. 222, 92 L.Ed. 210 (1948), and United States v. Hickey, 360 F.2d at 139.

In Bailey v. United States, 135 U.S. App.D.C. 95, 416 F.2d 1110 (1969), the District of Columbia Circuit reversed a conviction for robbery because the evidence was insufficient to find that the defendant participated in the crime. Although that case dealt with aiding and abetting, we think that it is equally applicable to the question whether Vela participated in the conspiracy. In *Bailey,* Judge Robinson delineated the criteria other than presence or association which was necessary to establish participation in the crime.

Appellant's conduct, as portrayed in the view most favorable to the Government, amounted to presence at the scene of the crime, slight prior association with the actual perpetrator, and subsequent flight. A *sine qua non* of aiding and abetting, however, is guilty participation by the accused. "In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" The crucial inquiries in this case relate to the legal capabilities of the evidence to sustain a jury determination that appellant collaborated to that degree in the robbery.

An inference of criminal participation cannot be drawn merely from presence; a culpable purpose is essential. In Hicks v. United States (150 U.S. 442, 14 S.Ct. 144, 37 L.Ed. 1137), the Supreme Court recognized that the accused's presence is a circumstance from which guilt may be deduced if that presence is meant to assist the commission of the offense or is pursuant to an understanding that he is on the scene for that purpose. And we have had occasion to say that "[m]ere presence would be enough if it is intended to and does aid the primary actors." Presence is thus equated to aiding and abetting when it is shown that it designedly encourages the perpetrator, facilitates the unlawful deed—as when the accused acts as a lookout—or where it stimulates others to render assistance to the criminal act. But presence without these or similar attributes is insufficient to identify the accused as a party to the criminality. . . . 416 F.2d at 1113–1114. *See also* United States v. Kelton, 446 F.2d 669, 671 (8th Cir. 1971).

■ The case before us is distinguishable from United States v. Cardi, 478 F.2d 1362, 1368 (7th Cir.), cert. denied, 414 U.S. 1001, 94 S.Ct. 355, 38 L. Ed.2d 237 (1973), where Cardi's own

words were evidence of his knowing participation in the conspiracy to unlawfully sell narcotics. Here we only have a single act of Vela—the driving of a car. Although Vela was in the apartment and in the Holiday Inn when purchases of pills were discussed, both Government agents testified that they never had any conversation with him about the sale of drugs. The driving of a car in which one of the conspirators as well as another party rode was insufficient evidence from which a jury could reasonably infer that Vela intended to participate in the conspiracy or " 'knew of the conspiracy and associated himself with it.' United States v. Bentvena, 319 F.2d 916, 927–928 (2d Cir. 1963)." United States v. Cardi, 478 F.2d at 1369.

## II

Defendants allege that it was error for the trial judge to deny their request for additional challenges which were made on the morning of trial after the jury panel had been called. The defendants asked ten peremptory challenges each. The judge denied the motion after pointing out to counsel that if the motion had been filed earlier, he could have called additional jurors. The judge did grant the defendants a total of twelve peremptory challenges, but later reduced that to ten, the required number under Rule 24(b) of the Federal Rules of Criminal Procedure.

■ There was no objection by defense counsel to the reduction, and one defense attorney stated that he understood the reason for the reduction. After the defendants had used all their peremptory challenges, there were eleven jurors in the jury box. The judge told counsel that he could either have the clerk call additional jurors or counsel could stipulate to go to trial with eleven jurors. The Government and defense counsel so stipulated. Under these circumstances, the trial judge did not err in denying the request for additional peremptory challenges.

## III

■ Since defense counsel agreed to the presence of Special Agent Schabilion at the Government counsel table and did not object during the trial to his being called after listening to Hale testify, the defendants do not have cause to raise this issue for the first time on appeal.

## IV

■ We have reviewed the record and we find no erroneous limitation on the cross-examination of Joseph Hale. Hale admitted to his having used marijuana and to a conviction for possession of marijuana and denied use of any narcotics or other dangerous drugs. The trial judge allowed wide leeway in the cross-examination. We are at a loss to understand the relevance of any further questions defense counsel could have asked on use of drugs or narcotics.

## V

■ The last contention of defense counsel is that the trial judge by repetition erroneously gave undue emphasis in his instructions to the effect that the Government did not need to prove a violation of 21 U.S.C. § 841(a)(1) (distribution of a controlled substance) in order to prove that the defendants were guilty of conspiring to violate section 841(a)(1). The given instruction was:

Each defendant in this case has been charged in the indictment with conspiring to violate Section 841(a)(1) of Title 21 of the United States Code. No defendant, however, has been charged with actually violating Section 841(a)(1). Therefore, the Government need not prove beyond a reasonable doubt that any defendant violated Section 841(a)(1). The Government, however, must prove beyond a reasonable doubt as to a particular defendant now on trial that he was knowingly a member of a conspiracy and that an object of such conspiracy was, as charged in the indictment, to violate Section 841(a)(1).

The elements of the crime set forth in Section 841(a)(1) so far as here relevant are that an individual or individuals

(1) Distributed a Schedule III controlled substance and was not authorized by law to so distribute;

(2) That such distribution was done knowingly and intentionally and with specific intent.

However, I again remind you that no defendant is here charged with personally violating Section 841(a)(1). Rather, each defendant is here charged with knowingly and wilfully conspiring with others to violate Section 841(a)(1) as outlined above. The Government need not prove that any defendant or any other alleged co-conspirator actually violated Section 841(a)(1).

Defendants argue without any authority that this repetition unduly emphasized the point and may have prejudiced their case. We fail to perceive any prejudice.

1. See United States v. Stromberg, 268 F.2d 256, 267 (2d Cir. 1959), cert. denied, 361 U. S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102, which is distinguished in United States v. Cardi, 478 F.2d 1362, 1369 (7th Cir. 1973), cert. denied, 414 U.S. 1001, 94 S.Ct. 355, 38 L.Ed.2d 237, on the ground that Cardi's knowledge of the illegal transaction provided the element that was lacking with respect to the defendant Snyder in the *Stromberg* case.

2. See Bailey v. United States, 135 U.S.App. D.C. 95, 416 F.2d 1110, and cases cited at 1113–1114 (1969).

3. In United States v. Greer, we identified the two general components of aiding and abetting as (1) an act on the part of a defendant which contributes to the execution of a crime, and (2) the intent to aid in its commission. See 467 F.2d 1064, 1069 (7th Cir. 1972). Evidence sufficient to prove those two components may perform the "double duty" of supporting a conspiracy charge as well. See Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919. In *Greer*, although the evidence was insufficient to support the count charging Greer with aiding and abetting the substantive violation of transporting stolen copper, it was sufficient to sustain his conviction

We affirm the convictions of Rick Felts, Vera Felts, and Kirk Baker; we reverse the conviction of Ralph Vela.

STEVENS, Circuit Judge (concurring in part and dissenting in part).

The mere performance of an act, such as driving a car making a delivery of narcotics, does not make the actor a conspirator if he does not know the character of his cargo.[1] Conversely, mere knowledge that a crime is being committed in one's presence does not make the bystander responsible for the actions of his associates.[2] But if the evidence establishes both (a) knowledge of the criminal character of an enterprise and (b) affirmative conduct which contributes to the consummation of the transaction, a jury may properly infer deliberate participation in a conspiracy.[3]

In this case, proof that Vela was fully informed about the character of the narcotics transaction is overwhelming; for he was present on two occasions when negotiations for the sale of drugs took place at his residence,[4] and he was also

under the conspiracy count. See 467 F.2d at 1071. In this case I believe the evidence would be sufficient to establish either (a) that Vela aided and abetted the sale of the "reds" or (b) that he knowingly contributed his efforts in furtherance of the conspiracy to sell them. See United States v. Hickey, 360 F.2d 127, 138 (7th Cir. 1966), cert. denied, 385 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210.

4. Concerning the first occasion, Joseph Hale testified:
Q At that location of 3509½ Indiana Avenue, did you have further discussion with Rick Felts in the presence of Ralph Vela about drugs or anything like that?
A Yes, we did.
Q What was the conversation?
A Rick said that he mainly dealt in marijuana, but he had a friend who handled a lot of reds and, you know, the different kinds of downers, and he had made several trips up to Detroit to buy some cocaine and bring back to town, and that he had just come back from the west coast with about 60 pounds of marijuana.
Q On that visit with Rick Felts and Ralph Vela at 3509½ Indiana, did you observe any drugs at that location at that time?

present when the actual sale was made at the Holiday Inn.[5] It is also perfectly clear that his conduct in driving Felts to and from the Holiday Inn where the "reds" were delivered was affirmative conduct which furthered the consummation of the illegal transaction. The act of driving the car may have made only a minor contribution to the criminal enterprise. However, since it was performed with full awareness of its significance, it provides a sufficient basis for the jury's finding of guilt.

The fact that neither Vela's knowledge, taken by itself, nor his conduct, taken by itself, is sufficient to prove his participation in the conspiracy, is of no significance because it is the combination of knowledge and conduct disclosed by the record that must be appraised. I would therefore affirm the conviction of Vela as well as the convictions of his co-defendants.

A Yes, sir, he had a suitacase with about six bags of marijuana in that that looked like, you know, about what I would say weighed about a pound each, and he had a little bag of cocaine.

Tr. 59. See also Tr. 93–95.

Concerning the second occasion, Hale testified:

Q Was the Defendant Ralph Vela also present?

A Yes, he was.

Q Did you introduce those two individuals to Agent Schabilion?

A Yes, I did.

Q Did the Defendant Rick Felts have a discussion with you and Agent Schabilion at that time?

A Yes, he did.

Q What did he say to you?

A He said that in order to get these reds that he had to get hold of his other man that he had done the business with, which was Kirk Baker, and he wanted us to go over there to Baker's residence with him at that time.

THE COURT: Just a minute. I again want to point out at this point that this witness has testified that this conversation occurred in the presence of two of the Defendants.

Tr. 61. Although Schabilion testified that he "believed" Vela was seated in another room

during this conversation, Tr. 127, the jury was entitled to credit Hale's version as quoted above.

5. Hale testified as follows:

Q Who came to your room?

A Rick Felts, Ralph Vela, and another man named Hans. .

Q What happened on that occasion when they came to see you?

A They came over about 1:35 in the afternoon, and Rick got out the five bags of reds, out of his coat pocket, which contained 100 each, and he sold these reds to the Agent for one hundred and a half.

Q $150.00?

Q Did Agent Schabilion give him $150 in cash?

A Yes, he did.

Q Those three individuals left the apartment then?

A Yes. They left about 1:50 in the afternoon.

Q Did you see what vehicle they left in?

A Yes. See, they arrived and left in a '66 Pontiac and Ralph was driving it.

Q Defendant Ralph Vela was driving it?

Tr. 69–70. See also Tr. 108–109; 138–39; 186–87; 197–98; 279–80.