UNITED STATES of America,
Plaintiff-Appellee,

v.

Joel GARZA–HERNANDEZ and Ramon
Vargus-Villareal,
Defendants-Appellants.

Nos. 79–2012, 79–2023.

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1980.

Decided June 10, 1980.

Michael Guinan, Chicago, Ill., for defendants-appellants.

Thomas P. Sullivan, U. S. Atty., David C. Bohan, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER and CUDAHY, Circuit Judges, and NOLAND, District Judge.[*]

* The Honorable James E. Noland, Judge of the United States District Court for the Southern District of Indiana, is sitting by designation.

BAUER, Circuit Judge.

Defendants Joel Garza-Hernandez (hereinafter "Garza") and Ramon Vargus-Villareal (hereinafter "Vargus") were convicted by a jury of conspiring to distribute heroin in violation of 21 U.S.C. § 846 and of possession of heroin with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1). Each defendant was sentenced to ten years imprisonment on each count, the sentences to run concurrently; each was also sentenced to six years of parole to take effect after release from prison. The defendants appeal, alleging both that the trial court erred in failing to suppress evidence and that the evidence was insufficient to support the convictions. We affirm the convictions of both defendants on both counts.

## I. Suppression of Evidence

### A. Absence of Probable Cause to Search

Defendants first contend that a search of defendant Vargus' car was made without probable cause; they argue that heroin found in the search should therefore have been suppressed.[1] After reviewing the transcript of the suppression hearing, we conclude, as did the district court, that facts known to the DEA agents at the time the search was made were sufficient to make out probable cause to search. These facts may be summarized as follows:

DEA agents learned from informant Manuel Delgadio that one Rene Villareal (apparently unrelated to defendant Vargus-Villareal) was trafficking in heroin and was using his gas station at 31st and Kedzie in Chicago in connection with his drug trade. DEA agents also learned that Villareal worked with one Arturo Vargus (also apparently no relation to defendant Vargus-Villareal) in selling heroin, and that they would use a "car switch" technique whereby they would borrow a heroin purchaser's

car, drive it to a secret location where their heroin was hidden, place the heroin in the car, and then return the car to the purchaser. DEA agents began surveillance of Villareal's service station after learning these facts.

While conducting surveillance of the station, DEA agents saw Rojillio Chavez and other persons from a Phillips 66 service station located at 23rd and Western frequent Villareal's station. They also observed a male Latin come to the station in a car bearing a form in plain view that identified the car's owner as Armando Esparza of 3101 South Keeler, Chicago. DEA Agent Maurice Dailey ran a background check on Armando Esparza through NADIS, an international computer data bank of criminal intelligence information, and learned that Esparza had negotiated to sell heroin to an undercover DEA agent in 1977. Dailey also learned that Esparza had boasted to the agent of receiving frequent shipments of heroin. Dailey and other DEA agents then began periodic surveillance of Esparza's residence.

On April 17, 1979, DEA agents observed Francisco Esparza, Armando's brother, leave the 3101 South Keeler residence in a green and white Ford. The agents followed Francisco and observed him engage in circuitous driving at sharply varying speeds after reaching the vicinity of 63rd and Rockwell. From their training and experience, the agents knew that this type of driving was intended to reveal whether Francisco was being followed; the agents had often observed this type of driving by those engaged in illegal drug trade. The agents then saw Francisco park his car and enter a residence at 6324 Rockwell. Knowing that those who deal in heroin often store their stock of the drug in a place other than their residence both to conceal the

---

1. The trial court ruled that Garza did not have standing to contest the search of Vargus' car. Garza makes no specific argument in his brief to this court that that determination was in error, and thus the government urges that only the Fourth Amendment rights of Vargus are at issue on appeal. It appearing that Garza may have had standing to challenge the search un-

der the doctrine of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), we think the best course is to assume for purposes of this opinion that Garza's challenge to the search is properly at issue; as is seen in text, *infra*, we find no violation of either Garza's or Vargus' Fourth Amendment rights.

location of the drug and to disassociate themselves from the drug, the agents suspected that the 6324 Rockwell address might be Esparza's heroin storehouse. After a few minutes had passed, the agents saw Francisco leave the Rockwell address carrying a brown paper bag that appeared to be half full. They followed Francisco's car to the vicinity of 47th and Cicero Avenue, where he resumed the circuitous driving pattern earlier observed. After parking the car, Francisco entered a residence at 4344 Kilpatrick with the bag, and he emerged shortly thereafter without the bag. He then returned to 3101 South Keeler. The 4344 Kilpatrick address was apparently the residence of Arturo Vargus, the man Delgadio had identified as Rene Villareal's accomplice in the heroin trade.

On April 19, 1979, DEA agents observed both Esparza brothers leave the South Keeler residence and drive in Armando's Pontiac to the vicinity of 22nd and Austin, where they began circuitous driving. Stopping at 16th and 51st Court, Francisco got out and entered a red and white Buick owned by defendant Vargus. The agents suspected the maneuver was the beginning of the "car switch" technique that informant Delgadio had told them was employed by Rene Villareal's heroin ring. This technique, the agents knew, was often employed by those who deal in heroin. The Esparzas then drove both cars to 63rd and Rockwell, where they resumed circuitous driving. They then parked the cars and entered the building at 6324 Rockwell. Fifteen minutes later Francisco reemerged and drove the red and white Buick to the rear of the building. Francisco then opened the trunk, Armando appeared from the building carrying a full paper bag, and, after looking up and down the alley, Armando placed the bag in the trunk of the Buick.

The Esparzas then drove back to Cicero, Francisco in Vargus' Buick and Armando in the Pontiac. They resumed circuitous driving when they reached the vicinity of 16th and 51st Court. Francisco then parked the Buick near the location from which it had been taken and the two brothers returned in the Pontiac to 3101 South Keeler.

About a minute after the Esparzas had left, defendant Vargus appeared near his parked Buick. He got into the car and drove it in a circuitous fashion for several minutes; he then returned it to a parking place. As Vargus got out of the car, defendant Garza appeared across the street. The two met and walked down a gangway at 1524 51st Court.

At about noon on that day, Dailey and other DEA agents observed Vargus and Garza emerge from the gangway. Vargus got in his red and white Buick, while Garza entered a yellow Buick parked nearby. Garza drove to a place on Cicero Avenue between 19th and 23rd Streets, where he parked and remained in the car. Meanwhile, Vargus drove his car in a circuitous manner, once driving into an alley filled with potholes and then accelerating out of the alley at a high speed. Eventually, Vargus drove past Garza, who was still in the parked car on Cicero Avenue, and Garza immediately began to follow Vargus.

The defendants drove, via Stevenson Expressway, to a shopping center parking lot at 71st and Pulaski. Vargus parked his car in a nearly empty portion of the lot; Garza parked some two hundred feet away among other cars. Both then entered several stores, made a telephone call, returned to the yellow Buick, and left in it. Vargus' red and white Buick remained in the lot.

During the next eight hours, between 1:00 p. m. and 9:00 p. m., Vargus and Garza returned to the lot about eight times and drove past the red and white Buick. During one such trip, the defendants placed a call from a phone booth in the shopping center.

Between 9:00 and 9:30 p. m., a tow truck from the Phillips 66 station at 23rd and Western approached the Buick. Rojillio Chavez, whom the agents had seen at Villareal's station at 31st and Kedzie, was driving the truck. Chavez hooked the Buick onto the tow truck and towed it to the Phillips 66 station. En route, Chavez stopped twice, got out of the truck, and looked up and down the street; he did not

check the hoist either time. After arriving at the darkened and closed Phillips 66 station, Chavez started to move the Buick into a service stall. At this point agent Dailey gave orders to move in.

Dailey ordered Chavez out of the truck and asked him why he had towed the Buick. Chavez responded that his friend Jesus Martinez owned the car and had asked him to fix it. Dailey then asked for the keys. Chavez produced the ignition key. When Dailey asked for the trunk key Chavez responded, "I don't have to tell you anything." Another agent then questioned Chavez, and Chavez told him that he had never met the person who owned the Buick. At about this time, uniformed Chicago police arrived at the station in response to a citizen's mistaken report of a burglary. Shortly after the arrival of the uniformed police, DEA agents saw Vargus and Garza drive past the station. Dailey then opened the trunk of the car and found in a paper bag approximately twenty pounds of heroin worth about two and one-half million dollars at street value.

■ The standards governing inquiry into the presence of probable cause to search may be summarized as follows: Probable cause exists if "'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that'" an item subject to seizure will be found in the place to be searched. *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949) (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). Probable cause is thus more than bare suspicion, but less than virtual certainty. *Id.* at 175, 69 S.Ct. at 1310. As the term itself implies, probable cause exists if the probability is that the thing sought is in the place to be searched; probabilities are to be assessed in the light of practical experience and the practical

inferences to be drawn from known or reliable facts. *Id.* at 175–76, 69 S.Ct. at 1310–1311. Government agents are entitled to reasonably rely on their special knowledge and expertise in assessing probabilities and drawing inferences. *E. g., United States v. Hall,* 525 F.2d 857, 859 (D.C.Cir.1976).

■ Applying these standards to the case at bar, we find that the facts known to Dailey and the other DEA agents from their surveillance were sufficient to give rise to the reasonable belief that it was probable that the trunk of the car contained heroin. The constant use of circuitous driving by all parties to the transportation of the heroin is the single most important factor. *See, e. g., United States v. Bernard,* 607 F.2d 1257, 1260 n. 5, 1265–68 (9th Cir. 1979); *United States v. Alejandro,* 527 F.2d 423, 425, 427 (5th Cir.), *cert. denied,* 426 U.S. 923, 96 S.Ct. 2632, 49 L.Ed.2d 377 (1976); *United States v. Tramunti,* 513 F.2d 1087, 1103–04 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). The fact that the Esparzas obtained the bag from the Rockwell address, and that Francisco had obtained a similar bag from that address once before and delivered it to the address of suspected heroin dealer Arturo Vargus, is also significant. Important too was the "car switch" technique used by the Esparzas to deliver the bag to Vargus and Garza. Finally, the repeated trips by Vargus and Garza to visit the car in the parking lot and the suspicious and inconsistent answers given by Chavez to the DEA agents contributed significantly to the presence of probable cause to search. *See, e. g., United States v. White,* 488 F.2d 563, 564 (6th Cir. 1973) (per curiam). All this, as well as the information known to the agents concerning many of the persons involved in the series of transactions, was enough to "warrant a man of reasonable caution in the belief that" heroin was in the trunk of Vargus' car. *Brinegar v. United States, supra.*[2] Accordingly, the search was

---

**2.** Defendants place principal reliance on *United States v. Foust,* 461 F.2d 328 (7th Cir. 1972). That case involved a situation utterly unlike the

one at bar and invalidated a search that was made with far less reason than that which

500

not unconstitutional due to an absence of probable cause, and it was not error to refuse to exclude the heroin on this ground.

## B. Failure to Obtain a Search Warrant

■ Defendants also contend that the heroin should have been excluded because the search of Vargus' car was made without a warrant. We find that, under the circumstances that existed when the search was made, no warrant was required.

Because automobiles are extensively regulated by the state, are in large part open to public view, and are primarily used for purposes of transportation and not for the storage of personal effects, the reasonable expectation of privacy that persons may have in their autos is usually of a lesser magnitude than privacy expectations that inhere in other types of property. *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 12–13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977); *South Dakota v. Opperman*, 428 U.S. 364, 368, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976); *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974) (plurality opinion); *Cady v. Dombrowski*, 413 U.S. 433, 441–42, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973); *Almeida-Sanchez v. United States*, 413 U.S. 266, 279, 93 S.Ct. 2535, 2542, 37 L.Ed.2d 596 (1973) (Powell, J., concurring). This lessened expectation of privacy, when coupled with the fact that the inherent mobility of an automobile often makes it impracticable to obtain a warrant before the automobile and its contents are removed or hidden, has resulted in the doctrine that the search of an automobile is often permissible despite the fact that no warrant has been obtained. *Carroll v. United States, supra*, 267 U.S. at 153, 45 S.Ct. at 285; *see Arkansas v. Sanders, supra*, 442 U.S. at 759, 99 S.Ct. at 2591;

*Coolidge v. New Hampshire*, 403 U.S. 443, 460, 91 S.Ct. 2022, 2034, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney*, 399 U.S. 42, 50, 90 S.Ct. 1975, 1980, 26 L.Ed.2d 419 (1970). The need to proceed without a warrant is "strikingly" present "where the automobile's owner is alerted to police intentions and, as a consequence, the motivation to remove evidence from official grasp is heightened." *Cardwell v. Lewis, supra*, 417 U.S. at 590, 94 S.Ct. at 2469 (plurality opinion); *see Chambers v. Maroney, supra*, 399 U.S. at 51, 90 S.Ct. at 1981. When faced with such exigent circumstances, there is, "[f]or constitutional purposes, . . . no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers v. Maroney*, 399 U.S. at 52, 90 S.Ct. at 1981; *see Texas v. White*, 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975) (per curiam).

In the instant case, the car itself [3] and the tow truck to which it was attached were mobile. Defendants Vargus and Garza, as well as tow truck driver Chavez, were "alerted to police intentions" by the actions of the DEA agents and the arrival of uniformed Chicago police. To assure that the car itself and the evidence believed to be in it would not be removed or destroyed, it was necessary either to search the car immediately or to seize it until a warrant could be obtained. As probable cause to search was present, *Chambers v. Maroney, supra*, indicates that either course would have been reasonable; the decision to search the car without a warrant did not, therefore, violate the Fourth Amendment.

We note also that *Coolidge v. New Hampshire, supra*, in which the Supreme

---

supported the search involved in this case. *Foust* does not control here.

**3.** Defendants have argued that the car was inoperable because it had been towed to the service station. The car was seen by DEA agents being driven at the speed limit on Stevenson Expressway only hours before it was

towed. The agents might well have reasonably believed that the car was being towed not because it was inoperable but because towing the car was part of the scheme to distribute the heroin. Accordingly, exigent circumstances were present whether or not the car was operable.

Court invalidated the search of an automobile conducted without a warrant, listed five factors not present in that case that might justify a warrantless search of an automobile. These factors are the presence of an "alerted criminal bent on flight," the presence of a "fleeting opportunity on an open highway" to search, the fact that the object of the search is "contraband or stolen goods or weapons," the presence of "confederates waiting to move the evidence," and "the inconvenience of a special police detail to guard the immobilized automobile." 403 U.S. at 462, 91 S.Ct. at 2035–2036. Four of these factors are obviously satisfied in the case at bar, and the fifth, the fleeting opportunity to search on an open highway, is satisfied except to the extent that the car was stopped in a service station and not on the highway. We do not think this slight deviation from the *Coolidge* factors invalidates the search. *Cf. Texas v. White, supra.*

The defendants have argued, however, that DEA agents had ample opportunity to obtain a warrant while the Buick was stationary in the shopping center parking lot. Even if we were to assume that probable cause existed when the car was parked in the parking lot, we agree with the statement made by the plurality in *Cardwell v. Lewis, supra:*

> [W]e know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. . . . The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action.

417 U.S. at 595–96, 94 S.Ct. at 2472 (citation omitted). The soundness of this view is apparent when it is considered that a contrary view would force police to seek warrants before they are certain that probable cause is present in order to be sure that they had acted "at the first practicable moment." Moreover, a warrant obtained too early may become stale before it can be used, and the necessity of obtaining a warrant before the time is ripe for action would require that police direct their energies toward what may prove a fruitless procedure when those energies might better be spent in the investigation of the case. The Fourth Amendment standard of reasonableness imposes no such restriction on police investigative activities. Accordingly, the warrantless search of the automobile was constitutional, and the heroin was properly admitted into evidence at trial.

## II. Insufficiency of the Evidence

### A. The Conspiracy Count

■ "A conspirator need not participate in all the activities of the conspiracy, nor is it necessary that he become a member of the conspiracy at its inception. . . . It is only necessary that he knowingly contribute his efforts in furtherance of it." *United States v. Baker,* 499 F.2d 845, 848 (7th Cir.), *cert. denied,* 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974) (quoting *United States v. Hickey,* 360 F.2d 127, 138 (7th Cir.), *cert. denied,* 385 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966)); *see also id.* at 850 & n. 3 (Stevens, J., dissenting). Under this standard, and viewing the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the conviction of both defendants on the conspiracy count must be affirmed.

■ The evidence earlier chronicled indicates that the defendants worked together in pursuance of a common design and to achieve a common purpose. As to defendant Vargus, the timing of his initial appearance near his car, his repeated acts of circuitous driving, the fact that it was his car that contained the heroin, and the fact that he gave false exculpatory statements when apprehended were sufficient to demonstrate his participation in the plan to distribute

the heroin.[4] *See, e. g., United States v. Sawyer*, 607 F.2d 1190, 1192 (7th Cir. 1979). Defendant Garza's participation in the scheme was adequately demonstrated by the timing of his first meeting with Vargus; Garza's subsequent, planned manner of first waiting for Vargus and then following him to the shopping center parking lot; the fact that he drove Vargus past the red and white Buick numerous times during the afternoon and evening of April 19, 1979; the fact that he placed two phone calls with Vargus that afternoon; and the fact that he later drove Vargus past the service station to which the red Buick had been towed.[5] If more were needed, both Vargus and Garza were arrested while in possession of cards on which the address of the Phillips 66 station was written. The evidence was sufficient to support both defendants' convictions on the conspiracy count. *See, e. g., United States v. Washington*, 586 F.2d 1147 (7th Cir. 1978).

### B. The Possession Count

Finally, defendant Vargus contends that the evidence was insufficient to show that he knowingly and intentionally possessed the heroin, and defendant Garza contends that the evidence was insufficient to show that he possessed the heroin, knowingly or otherwise. The evidence earlier summarized was sufficient to permit the jury to conclude that Vargus knew the heroin was in the trunk of his car and that he intentionally took constructive possession of it.[6] Vargus' actions, his method of driving, and

all of the circumstances of the case indicate that Vargus knew the heroin was in the car. Moreover, it is highly improbable that the Esparzas would place two and one-half million dollars worth of heroin in an unsuspecting person's car and then drive off and leave it there. The evidence was clearly sufficient to permit the jury to find that Vargus knowingly and intentionally possessed the heroin.

As to Garza, we have previously concluded that he was properly convicted of conspiring to distribute the heroin. Given this, he is liable for acts that Vargus took in furtherance of the conspiracy.[7] *See Pinkerton v. United States*, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946); *United States v. Felts*, 602 F.2d 146 (7th Cir. 1979). One of these acts was Vargus' possession of the heroin. Accordingly, Garza was properly convicted of the possession offense.

For the foregoing reasons, the judgments of conviction are affirmed.

Affirmed.

---

**4.** Intent to distribute can be inferred from the large amount of heroin that was found. *See, e. g., United States v. Di Novo*, 523 F.2d 197, 202 (7th Cir.), *cert. denied*, 423 U.S. 1016, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975).

**5.** *United States v. Baker*, 499 F.2d 845 (7th Cir.), *cert. denied*, 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974), on which Garza relies, does not control here. *Baker* involved a defendant who was merely present when drug negotiations were discussed and who drove a drug dealer to a meeting with government agents. Defendant Garza's participation in the instant conspiracy to distribute heroin was more extensive than was the participation at issue in *Baker*. Garza's actions are virtually inexplicable on a ground other than that he

knew of the conspiracy and intended to further it.

**6.** The fact that Vargus was in control of a vehicle that contained heroin and the fact that he could at any time have obtained actual possession of the heroin simply by taking it from the trunk is sufficient to show Vargus' constructive possession of the heroin. *See, e. g., United States v. Bartemio*, 547 F.2d 341, 344 (7th Cir. 1974). Constructive possession is sufficient to support a conviction under 21 U.S.C. § 841(a)(1). *United States v. Mancillas*, 580 F.2d 1301, 1308–09 (7th Cir.), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978).

**7.** The jury was so instructed.