**UNITED STATES of America, Plaintiff,**

v.

**Christ SAVIDES, et al., Defendants.**

**No. 87 CR 17.**

United States District Court,
N.D. Illinois, E.D.

July 27, 1987.

See also, 664 F.Supp. 1544.

motions to suppress ten kilograms of cocaine seized without a warrant from a suitcase found in a trunk of a car on April 3, 1986. Because this court finds that the searching officers had probable cause to believe the suitcase contained dangerous instrumentalities that presented an imminent threat of harm to the public, no Fourth Amendment rights were violated when police searched the suitcase without a warrant. For the reasons stated herein, defendants' motions to suppress are denied.

## I. FACTS

After conducting an extensive hearing over a period of weeks on defendants' motions to suppress at which testimony was offered by defendants and the government, this court enters the following findings of fact:

On March 8, 1986, Chicago Police entered the Park Ridge, Illinois condominium of defendant Christ Savides to execute a gambling search warrant. Aside from locating gambling paraphernalia, the officers discovered ten kilograms of cocaine, large amounts of cash and numerous unregistered firearms. After Savides was released on bail from the state charges which were filed, members of the Chicago Police Organized Crime Intelligence Unit (the "Syndicate Intelligence Unit") decided that Savides was a likely target of an attempted killing by the Chicago Organized Crime Syndicate (the "outfit" or "syndicate"). Considering the items recovered from his apartment and the fact that a man visiting Savides at the time of the search was believed to be an organized crime figure from Ohio, the Syndicate Intelligence Unit formed the belief Savides was a gambling room operator associated with the outfit. The Syndicate Intelligence Unit knew a long-standing rule of the outfit was that syndicate operators were forbidden from mixing traditional outfit activities (prostitution, gambling and loan sharking) with distributing narcotics. The rationale for this rule apparently stems from the increased attention law enforcement officials give to

Anton R. Valukas, U.S. Atty. by Thomas L. Knight and William Cook, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Edward M. Genson, Chicago, Ill., for defendant Savides.

Terence Gillespie, Chicago, Ill., for defendant Wilson.

Sam Adam, Chicago, Ill., for defendant Smith.

## ORDER

BUA, District Judge.

This matter concerns defendants Christ Savides, Robert Wilson and Donald Smith's

ferreting out drug traffickers and the fear that those arrested for serious drug offenses might consider cooperating to avoid substantial periods of incarceration. The Syndicate Intelligence Unit had seen several situations in which affiliates of the outfit had obviously been killed for failing to obey syndicate operating rules and feared that Savides' large-scale drug activities placed him in a position of danger. Based on the foregoing facts, the Syndicate Intelligence Unit decided on March 14, 1986 to assign seven officers to conduct surveillance of Savides at his Park Ridge residence.

During the period of surveillance, police viewed Savides frequently departing from the basement garage of his 15–unit building in a blue Ford sedan. Officers learned that the vehicle was registered to a car dealership in which Savides maintained an ownership interest. Officers typically followed Savides in undercover vehicles as he went about his daily business. At no time prior to April 3, 1986 had officers seen the Savides' vehicle operated by anyone other than Savides, except where Savides was a passenger.

On the morning of April 3, 1986, four of the seven officers assigned to the Savides case were positioned in unmarked cars around Savides' building. Officers viewed Savides' blue Ford sedan depart from the building garage and realized a man unknown to them was behind the wheel. The unknown man was later identified as defendant Robert Wilson. No other occupants appeared to be present in the car. The four officers decided to follow Wilson.

Wilson drove to a nearby restaurant and went inside to meet another unknown man later identified as defendant Donald Smith. After a short time, Smith and Wilson exited the restaurant and entered the rather large parking lot adjoining the eating establishment with a motel. The two men walked up and down the aisles in the parking lot peering into several vehicles as to ensure no one was watching. After completing their survey of the lot on foot, the two entered the Savides vehicle and with Wilson driving, rode slowly down the lanes of the lot, again searching the parked vehicles for the presence of any onlookers. After apparently satisfying themselves they were alone, Wilson backed the blue Ford behind a parked car bearing Massachusetts license plates. As Smith alighted from Savides' Ford, Wilson pressed the automatic trunk release. Smith opened the trunk of the Massachusetts vehicle, quickly removed a maroon suitcase, placed it in the trunk of Savides' Ford and slammed both trunks closed. Smith then jumped behind the wheel of the Massachusetts vehicle and followed Wilson out of the parking lot. The four officers trailed some distance behind.

Wilson and Smith exited onto an expressway. At one point, officers observed that several trucks became interposed between the two cars. Realizing that he was not in sight of Smith, Wilson pulled to the shoulder of the expressway until Smith caught up. The two men then exited the expressway and began to head toward Savides' residence.

As Smith and Wilson entered a residential subdivision near Savides' building, the two became alerted that they were being followed. Wilson and Smith sharply accelerated their vehicles attempting to evade the undercover cars. Nearing Savides' building, Smith turned quickly into an outdoor parking lot while Wilson proceeded into the underground garage activating the electric door behind him. One of the pursuing officers, Michael Patton, pulled his vehicle under the closing garage door wedging it open. Officer Patton drew his revolver and approached Savides' car just as Wilson was locking it. When Wilson saw the officer, he dropped the keys, kicked them under the vehicle and stated, "this isn't my car." Officer Patton asked Wilson whose car it was, and Wilson responded, "I wasn't driving that car."

Meanwhile, Officer Nesis stopped Smith in the adjoining parking lot and escorted him into the garage where Wilson and Officer Patton were. After giving the officers their names, Smith and Wilson remained silent to questions posed to them by the officers. According to the officers, Wilson

and Smith each appeared to be over six foot two inches tall and weigh well in excess of 200 pounds. The officers patted down the two men, but no weapons were found.

Based on the purpose of their mission and the highly suspicious actions of the two men, Officers Nesis and Patton thought the suitcase placed in the trunk of Savides' vehicle contained some dangerous instrumentality with which Wilson and Smith intended to harm Savides. Believing the suitcase probably held some type of explosive, the officers concluded the case presented an immediate risk to the public's safety and decided to investigate.

While Officer Patton detained Wilson and Smith at gunpoint near the front of the Savides' vehicle, Officer Nesis retrieved the keys and opened the car's trunk. The maroon suitcase was carefully removed and placed on the garage floor. Officer Nesis then cautiously opened the case and discovered ten one-kilogram packages of a white powdery substance later shown to be cocaine. Smith and Wilson were placed under arrest and transported to police headquarters.

## II. DISCUSSION

Savides, Smith and Wilson each assert that the search of the suitcase violated their Fourth Amendment privacy rights and that the ten kilograms of cocaine seized must be suppressed. Savides, Smith and Wilson argue that officers were without authority to conduct a warrantless search of the suitcase found in the trunk of the Savides vehicle. Defendants contend that nothing police viewed on the day in question could have possibly led police to reasonably believe that Smith and Wilson were assassins in the process of making an attempt on Savides' life. Defendants further assert even if probable cause existed to believe some criminal activity was afoot, the actions of the officers searching the suitcase without calling for expert assistance clearly shows that officers did not believe the case contained explosives. As such, defendants argue that even if officers had probable cause to stop Wilson and

Smith, no exigent circumstances existed to justify the warrantless search of the suitcase.

### A. *Standing*

 Although the government carries the burden of proving the officers reasonably believed exigent circumstances existed which necessitated the warrantless search in question, each defendant must first establish he possessed a reasonable expectation of privacy in the item or area searched before Fourth Amendment rights attach. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). During the hearings on defendants' motions, testimony was offered that showed the blue Ford sedan possessed by Savides was registered to a car dealership in which Savides held an ownership interest. Ownership and regular use of a vehicle searched typically accords Fourth Amendment standing. *See United States v. Burnett*, 493 F.Supp. 948, 952 (N.D.N.Y.1980), *aff'd* 652 F.2d 55 (2d Cir.1981). Although Savides may not have actually owned the blue Ford in question, his ownership interest in the car dealership to which the vehicle was registered accords Savides with a sufficient expectation of privacy to contest the warrantless search of that vehicle and any containers found therein.

 As to defendant Smith, the testimony of the surveilling officers clearly shows that Smith was the party who possessed the suitcase prior to placing it in the trunk of Savides' vehicle. Smith's actions in following Wilson after removing the case from his car undercuts the contention that he intended to abandon any of his ownership interests. Although Smith may not have standing to object to the search of the trunk, he possessed a legitimate expectation of privacy in the suitcase and thus is entitled to object to its warrantless search.

 Defendant Wilson testified that he had Savides' permission to operate the blue Ford on the day in question. Wilson was exercising exclusive control over the car at the time it was searched. According to *United States v. Griffin*, 729 F.2d 475, 483 n. 11 (7th Cir.1984), these facts are

sufficient to support a legitimate expectation of privacy in the vehicle searched to challenge police conduct on Fourth Amendment grounds. However, Wilson's actions after leaving Savides' car operate as an abandonment of any privacy interests in the vehicle. *See United States v. Hawkins*, 681 F.2d 1343, 1345 (5th Cir.1982); *United States v. Williams*, 538 F.2d 549, 550 (4th Cir.1976) (disclaimer of ownership or knowledge of an item ends a legitimate expectation of privacy in that item). Wilson's statements disavowing ownership and operation of the car coupled with his act of kicking the keys under the vehicle clearly preclude Wilson from asserting a legitimate expectation of privacy in the vehicle. Whether or not Wilson's statements or actions of disassociation were capable of belief does not diminish their legal effect. As such, defendant Wilson is without standing to challenge the warrantless search.

### B. *Reasonableness of Police Conduct*

■ Defendants essentially assert that nothing Wilson or Smith did could have given police a reasonable belief or suspicion that the two were about to make an attempt on Savides' life or were engaging in any criminal activity that posed an immediate threat of harm to the public. In determining whether police had probable cause to believe that Wilson and Smith were engaged in a conspiracy to commit a violent crime and possessed a suitcase containing a dangerous instrumentality, this court is entitled to consider the special knowledge and expertise of Officers Patton and Nesis in detecting criminal activity. As the Seventh Circuit noted in *United States v. Garza-Hernandez*, 623 F.2d 496, 499 (7th Cir. 1980):

> Probable cause is thus more than bare suspicion, but less than virtual certainty. (citation omitted). As the term itself implies, probable cause exists if the probability is that the thing sought is in the place to be searched; probabilities are to be assessed in light of practical experience and the practical inferences to be drawn from known or reliable facts. (citation omitted). Government agents are entitled to rely on their special knowl-

edge and expertise in assessing probabilities and drawing inferences.

In the present case, Officers Patton and Nesis were assigned along with five other officers to protect Savides from a possible assassination. At the time of the surveillance, Officer Patton was a 14-year veteran of the force who had spent most of his career in organized crime intelligence. Officer Patton testified he was personally involved in surveillance investigations of several organized crime figures who were ultimately killed because they had broken outfit rules and brought potential exposure to the syndicate heirarchy. Officer Nesis, a detective, had spent his 30-year career with the Chicago Police Department investigating serious crimes.

■ After approximately three weeks of surveillance during which time the officers never saw any individual operate Savides' car without Savides being a passenger, an unknown man was seen leaving Savides' building in Savides' car. This man, Wilson, briefly met with a second unknown man, Smith, in a nearby diner. Leaving the restaurant, the men paced up and down the rows of the adjoining parking lot peering into each parked car as they passed. The men then slowly drove around the lot in Savides' car again apparently searching for any possible onlookers. After the maroon suitcase was quickly transferred from one car's trunk to another, the men returned to Savides' residence. Upon realizing undercover cars were following them, the two men accelerated their vehicles and attempted evasive actions.

Based on foregoing circumstances, Officers Patton and Nesis possessed at least a reasonable suspicion that Wilson and Smith might be assassins on their way to make an attempt on Savides' life. At that time, the officers were authorized to conduct a brief investigative stop to resolve their suspicions. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The conduct of Wilson denying he had driven the Savides vehicle coupled with his attempt to dispossess the car keys elevated the officers' suspicion to a reasonable belief the

two men returned to Savides' residence to wire his car or home with an explosive contained in the suitcase. Reasonably believing the case contained a dangerous instrumentality which posed an immediate risk to the public's safety, the officers were justified under the exigent circumstances doctrine to conduct a warrantless search of the suitcase in Savides' vehicle. *See United States v. Moschetta*, 646 F.2d 955, 959 (11th Cir.1981) (warrantless search of briefcase found in trunk of car justified under exigent circumstances doctrine where case was believed to contain a loaded spring triggered pistol). Because the ten one-kilogram packages of cocaine were aptly displayed when the suitcase was opened, Officer Nesis was entitled to seize the contraband as evidence of criminal activity in "plain view." *Michigan v. Tyler*, 436 U.S. 499, 509–10, 98 S.Ct. 1942, 1949–50, 56 L.Ed.2d 486 (1978).

Defendants argue, however, that the actions of the officers were in direct contradiction to their expressed belief the suitcase contained explosives. Because officers did not summon explosives experts to inspect the suitcase before opening it, defendants assert the officers could not have reasonably believed the case contained explosives. The officers testified, however, that they saw the manner in which Smith removed the case from the Massachusetts vehicle and placed it in the trunk of Savides' car. Smith's actions indicated to the officers that the contents of the case were not volatile to movement. The belief officers formed from viewing the occurrences described above in light of their experience was that the suitcase contained either a timed or unassembled explosive. Although calling explosives experts may have been the most advisable alternative available to the officers, the conduct of Officer Nesis in carefully moving and opening the case does not indicate the officers did not believe a dangerous instrumentality may have been present. In light of the totality of circumstances existing at the time of the search in question, this court finds that officers had probable cause to inspect the contents of the suitcase for the presence of explosives. Officers were enti-

tled to seize the contraband which appeared in plain view during the course of their search. As such, the ten kilograms of cocaine recovered are properly admissible against defendants at trial.

### III. CONCLUSION

For the foregoing reasons, defendants' motions to suppress are denied.

IT IS SO ORDERED.