UNITED STATES of America, Plaintiff–Appellee,

v.

Frank Lars LARKINS, Jr., Defendant–Appellant.

No. 95–2103.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 8, 1996.

Decided May 3, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied July 1, 1996.

Victoria Ursulskis (argued), Office of U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

Daniel E. Radakovich (argued), Chicago, IL, for defendant-appellant.

Before ESCHBACH, FLAUM, and MANION, Circuit Judges.

ESCHBACH, Circuit Judge.

Defendant Frank Larkins was convicted by a jury on both counts of a two-count indictment. Count I charged him with conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count II charged him with carrying a firearm during drug trafficking, in violation of 18 U.S.C. § 924(c)(1). The district court sentenced him to 80 months' imprisonment on count I and 60 months' imprisonment on count II. The imprisonment on count II was to be served consecutively to the 80 months imposed on count I. Defendant appeals his convictions and his sentence. We affirm.

In August of 1994, a confidential informant told the members of the Lake County Drug Task Force ("Lake County") that an individual named Ricki McClendon wanted to purchase kilogram quantities of cocaine. In response to the confidential informant's information, Lake County formulated a reverse sting plan. Pursuant to this reverse sting, the informant told McClendon that he and a friend had "ripped off" that friend's brother for an unstated amount of cocaine. The pilfered cocaine was offered at a discounted price of $11,000 per kilogram because of the theft and because the informant and his confidant needed money as quickly as possible. The normal market price for a kilogram of cocaine was between $20,000 and $29,000.

Lake County contacted the Drug Enforcement Agency ("DEA") and the Indianapolis Police because McClendon wanted the transaction to take place in Indianapolis rather than in Lake County. The participants agreed that the transaction would take place on August 31, 1994. The law enforcement officials secured two rooms at the Indianapolis Airport Days Inn hotel for the transaction and for surveillance of the transaction. Surveillance of the transaction included video and audio equipment to monitor the suspects' activities, officers inside and outside the hotel, and an undercover Indianapolis Police Officer, J.T. Jones, who played the role of the informant's confidant. Lake County brought three kilograms of cocaine to be displayed to McClendon during the sale process if necessary.

McClendon arrived with two vans, one tan and one maroon. McClendon rode in the maroon van that was driven by defendant Frank Lars Larkins, Jr. Larkins remained in the maroon van until the time of his arrest. McClendon proceeded to the hotel room and told Jones and the informant that the money for the deal was in one of the vehicles. McClendon also disclosed that he had brought three individuals and some weapons with him.

During the course of the meeting, McClendon requested that the informant accompany him to a vehicle to count the money. McClendon and the informant exited the hotel room and entered the maroon van. Larkins and McClendon sat in the front seats while the informant sat in the back seat. The informant found a scale and a brown paper bag containing the buy money on the back seat. While in Larkins's van, the informant conversed with Larkins and McClendon. During the conversation Larkins handled a weapon located between the two front seats. Larkins offered the weapon to the informant as a sign of trust. The informant was wearing a wire and the conversation was recorded on an audio tape. The conversation consisted of informal discussions meant to ease the situation—that is, that everything was "cool" and that Larkins and McClendon were not going to rob or rip off the informant.

The dialogue in the van lasted approximately five minutes. McClendon and the informant then went back into the hotel. When they arrived at the hotel room, McClendon indicated to Jones and the informant that he had enough money to purchase only two kilograms of cocaine. McClendon proposed that he take delivery of the two kilograms immediately and that Jones and the informant accompany him to a sale that same day. McClendon would sell the two kilograms of cocaine to a customer that McClendon had already lined up. McClendon would then pay Jones additional money for additional kilograms of cocaine.

McClendon and the informant then returned to Larkins's van. While waiting for Jones to meet them, McClendon, the informant, and Larkins had a second conversation. Larkins tried to reassure the informant that he and McClendon were "cool," that they were not the police, and that the only way people get caught is if someone knows what's going on.

Shortly thereafter the police arrested Larkins and McClendon and found two loaded handguns, a paper bag containing $25,682.00, and a digital scale. The police then learned that the maroon van driven by Larkins was registered to Larkins. The tan van was registered to McClendon's father.

During a hearing before the trial, Larkins asked the district court to exclude the audio tapes of the various conversations because they were not intelligible or understandable. The court reviewed the tapes and found them intelligible and understandable and, therefore, admissible subject to normal foundational objections. At Larkins's trial, the court allowed the United States to play the tapes of the police surveillance. The court also permitted the United States to play tapes of telephone conversations between the informant, McClendon and an unknown third party made prior to the August 31, 1994, meeting.

At the conclusion of the evidence, the district court discussed its proposed jury instructions with the defendant and the United States. Larkins reviewed the jury instructions, but did not object to them. The jury convicted Larkins of both counts of the indictment. At sentencing, a presentence report was prepared and provided to Larkins. The court then announced its tentative sentence and gave both parties an opportunity to object. Larkins did not object.

■■■ Larkins appeals his conviction on a number of grounds. Larkins presses hardest his challenge to the sufficiency of the evidence. In particular, he argues that the evidence failed to establish his agreement to participate in the *distribution* of the cocaine. We review a challenge to the sufficiency of the evidence to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when the evidence is viewed in the light most favorable to the government. *United States v. Monroe*, 73 F.3d 129, 131 (7th Cir.1995). Larkins bears a very heavy burden in challenging the sufficiency of the evidence with regard to his participation in a conspiracy. *United States v. Pulido*, 69 F.3d 192, 205 (7th Cir.1995).

■■■ We have noted many times that a conspiracy is "a confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act." *Id.* at 206 (quoting *United States v.*

*Campbell*, 985 F.2d 341, 344–45 (7th Cir. 1993) (citations omitted)). In order to sustain a conspiracy conviction, the government must provide substantial evidence that a conspiracy existed and that the defendant knowingly agreed to join that conspiracy. *United States v. Carson*, 9 F.3d 576, 587 (7th Cir. 1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 135, 130 L.Ed.2d 77 (1994). The government may establish each element of a conspiracy through circumstantial evidence. *United States v. Edwards*, 77 F.3d 968, 974 (7th Cir.1996). With respect to the first element, an agreement, the government need not establish a formal agreement to conspire. *United States v. Hickok*, 77 F.3d 992, 1005 (7th Cir.1996). The jury properly may find an agreement to conspire based upon "circumstantial evidence and reasonable inferences drawn therefrom concerning the relationship of the parties, their overt acts, and the totality of their conduct." *Id.* (quoting *United States v. Mojica*, 984 F.2d 1426, 1432 (7th Cir.), *cert. denied, Castaneda v. United States*, 508 U.S. 947, 113 S.Ct. 2433, 124 L.Ed.2d 653 (1993)).

█ The government marshals several facts in support of its position that the evidence established a conspiracy to distribute cocaine. First, McClendon arrived at the Days Inn with two vans, but he rode in the van owned and driven by Larkins. It is reasonable to infer that Larkins knew of the plan to acquire cocaine for distribution because McClendon did not need Larkins to drive him and he did not ride in Larkins's van out of necessity. McClendon could have ridden in the other van. Second, McClendon consistently referred to "my boys" who were outside in the "two vans" during his discussion with the confidential informant. The jury reasonably could infer from this that Larkins was one of McClendon's "boys" and that he was in on the conspiracy. Third, Larkins controlled the van containing over $25,000, two loaded handguns, and a digital scale. Fourth, Larkins carried on several conversations with the confidential informant regarding the drug transaction, urging everyone to be "cool." Larkins stated: "Everything's straight. We just nervous...." During one of these conversations, Larkins watched the informant count the money and

Larkins pushed a weapon toward the informant to garner the informant's trust and to establish his and McClendon's trustworthiness. This evidence is more than sufficient to establish an agreement between Larkins and McClendon.

█ There is also sufficient evidence to establish that the agreement between Larkins and McClendon encompassed plans to distribute the cocaine. During the negotiations in the hotel room, McClendon made a deal with the confidential informant to purchase kilogram quantities of cocaine. McClendon found himself short of enough money to pay for more than two kilograms. He proposed that he take delivery of two kilograms immediately and that Jones accompany him to a sale that very day to an unnamed customer who was waiting for the cocaine. McClendon indicated that he would then pay Jones additional money for additional kilograms of cocaine. This evidence establishes a plan to distribute the cocaine immediately after its purchase—McClendon had a buyer in waiting. McClendon and Larkins were to proceed to the buyer's location in Larkins's van.

The totality of this evidence and the reasonable inferences the jury may draw from it establish a conspiracy to possess cocaine with intent to distribute it and to distribute it. Larkins's actions facilitated the conspiracy and they confirm his decision to join the conspiracy. The evidence is sufficient to sustain Larkins's conviction.

Larkins argues, however, that the evidence fails to establish his participation beyond the acquisition of the cocaine. Essentially, he argues that it is not enough that he was present at the transaction and had knowledge of the purchase of the cocaine.

Larkins bases his argument on our decision in *United States v. Baker*, 499 F.2d 845 (7th Cir.), *cert. denied, Felts v. United States*, 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974). In *Baker*, we reversed the defendant's conviction for conspiracy to distribute narcotics because the only evidence of defendant's participation in the conspiracy was his presence at a drug transaction and his driving of a car in which one of

the conspirators rode to the drug transaction. There was no evidence that defendant participated in discussions at or about the transaction. We held that mere presence at a transaction or association with conspirators was insufficient to establish participation in the crime. *Id.* at 848.

The defendant's reliance on *Baker* is misplaced. *Baker* is distinguishable from the instant case because Larkins's conviction is supported by more than mere presence at the transaction and driving McClendon to the transaction. Larkins participated in discussions regarding the purchase of cocaine. Larkins also acted to reassure the confidential informant that everything was "cool" and he offered him a weapon as a sign of good faith. McClendon referred to his "boys" in the vans. Larkins drove McClendon in Larkins's van even though McClendon could have ridden in the other van. In addition, McClendon planned to distribute the first two kilograms of cocaine that very day to a buyer in waiting and he returned to Larkins's van for that very purpose. Larkins was not an innocent bystander. We have distinguished *Baker* on similar grounds before. *See United States v. Jones,* 950 F.2d 1309, 1313–14 (7th Cir.1991) (discussion of robbery plans with co-conspirators, making marks on map around area of bank, presence in vehicle when conspirators drove by bank, and defendant's reference to himself as one of group sufficient to establish conspiracy), *cert. denied, Tolliver v. United States,* 503 U.S. 996, 112 S.Ct. 1700, 118 L.Ed.2d 410 (1992); *United States v. Moya–Gomez,* 860 F.2d 706, 759 (7th Cir.1988) (presence during the conducting of conspiracy business is sufficient to support conspiracy conviction when defendant, by his actions, meant to contribute to success of conspiracy), *cert. denied, Estevez v. United States,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *United States v. Perry,* 747 F.2d 1165, 1171 (7th Cir.1984) (participation in drug transaction discussions distinguishes *Baker*); *United States v. Mancillas,* 580 F.2d 1301 (7th Cir.) (reasonable for jury to infer conspiracy based on defendant's presence in a car because coconspirator already had use of the car and had no apparent need for defendant's pres-

ence), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978).

Larkins also raises our decision in *United States v. Lechuga,* 994 F.2d 346 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993), which held that evidence of a transaction involving large quantities of controlled substances, without more, cannot sustain a conspiracy conviction. *Id.* at 364. *Lechuga* is not relevant to Larkins's crime. *United States v. Baskin–Bey,* 45 F.3d 200, 204 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1809, 131 L.Ed.2d 734, *and cert. denied,* —— U.S. ——, 115 S.Ct. 1986, 131 L.Ed.2d 873 (1995). In *Lechuga,* the government charged a seller of cocaine with conspiring to distribute drugs with the buyer. In the instant case, McClendon and Larkins are on the same side of the transaction. Finally, we reject Larkins's claim that Larkins is not a conspirator unless the government establishes that he has a financial stake in the overall distribution of the cocaine. The government need only prove that Larkins joined an agreement to distribute drugs. *United States v. Curley,* 55 F.3d 254, 257 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 190, 133 L.Ed.2d 127 (1995).

Larkins next challenges the district court's treatment of Government Exhibits 5 and 6, the tape recordings made on the day of his arrest. The district court determined that the tape recordings were sufficiently audible and trustworthy to be admissible and the court allowed the jury to use written transcripts, Government Exhibits 5A and 6A, as aids in listening to the tape recordings. We review the district court's decisions for abuse of discretion. *United States v. Robinson,* 956 F.2d 1388 (7th Cir.), *cert. denied,* 506 U.S. 1020, 113 S.Ct. 654, 121 L.Ed.2d 581 (1992).

Tape recordings that are partially unintelligible are admissible unless the unintelligible portions are so substantial as to render the entire recording untrustworthy. *Id.* at 1395. The district court noted Larkins's objection to Government Exhibits 5 and 6 and reviewed the tapes *in camera.* The court found the tapes admissible and noted that any inaudible portions did not

destroy the tapes' admissibility, but instead went to their weight as evidence. *See United States v. Zambrana,* 864 F.2d 494, 498 (7th Cir.1988). Our review of the tapes confirms the district court's decision. The tapes are not crystal clear, but given the circumstances in which the tapes were made, they were adequately understandable and intelligible to permit the jurors to hear them. We accord the district court broad discretion on such matters. *Id.* at 497, and Larkins did not offer an alternative transcription. Therefore, we find that the district court's decision was appropriate.

■■■ Larkins also challenges his sentence, claiming that he was entitled to a downward departure. A district court may depart downward from a sentence within the range established by the Sentencing Guidelines if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0, p.s. We lack jurisdiction to review a court's discretionary refusal to depart downward. *United States v. Muthana,* 60 F.3d 1217, 1224 (7th Cir.1995). Larkins argues, however, that the district court erroneously believed that the Sentencing Guidelines did not permit the court to depart downward even though mitigating factors existed. Such a belief would constitute a legal conclusion that the judge lacks authority to depart, rather than an exercise of discretion, and would permit appellate review. *United States v. Poff,* 926 F.2d 588 (7th Cir.), *cert. denied,* 502 U.S. 827, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991).

■■■ We presume that the district court knew that it had authority to depart downward and simply exercised its discretion not to do so. Defendant bears the burden of convincing us otherwise. Larkins bases his arguments on the district court's oral pronouncement at the sentencing hearing:

All right. Well, it's a real difficult case. Obviously you're not the prime mover in the effort to get the cocaine, but the evidence did show your involvement and the jury's verdict I think was in accordance with the evidence. But you have, you really have a remarkably good background and history before the day you got involved in this.... But the law requires certain penalties in this circumstance, and it's a message I think the community ought to know, that involvement in drugs, and quantities in the range of two kilograms was involved here, and further compounded with the involvement of the firearms bring some severe penalties. If there were more discretion available here where I had a range that allowed some other way to treat this, I might be able to come up with a sentence that everyone would feel more comfortable with, but I'm bound within the constraints of the law.

■■■ We disagree with defendant's interpretation of the district court's statements. First, the court, in its judgment, found "no reason to depart from the sentence called for by application of the guidelines." Second, the district court did exercise discretion, as is indicated by the fact that it chose to impose a sentence of 80 months' imprisonment on count I when the available range was 78 to 97 months. Third, Larkins never asked the court to *consider* a downward departure.[1] In fact, Larkins did not object to the court's sentencing findings or the sentence imposed by the court despite being offered the opportunity to do so. In that context, it appears that the district court was simply following the guidelines and noting compassion for a man sentenced in conformity with an exacting sentencing scheme. *See* U.S.S.G. § 5K2.0, comment. (district court's "dissatisfaction with the available sentencing range or a preference for a different sentence than

---

**1.** We do not hold that defendant forfeited his claim by failing to ask the court to depart downward. A forfeited claim is still reviewed for plain error. Fed.R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 730–34, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993). The district court's incorrect interpretation of the Sentencing Guide-

lines—if the court thought that it lacked authority to depart downward—could be plain error. We simply note that defendant did not ask the court to depart downward to put the court's statements at the sentencing hearing in their proper context.

that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range"). We lack jurisdiction to review Larkins's claim that the district court should have departed downward.

Finally, we conclude that Larkins's challenge to the jury instructions and his claim of ineffective assistance of counsel are meritless.

For the foregoing reasons, Larkins's convictions and sentence are AFFIRMED.