139 F.3d 902
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Ricki M. MCCLENDON, Defendant-Appellant.
 No. 96-1670.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 1, 1997.
Decided Feb. 10, 1998.
 
 Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division No. 94 CR 126.
 Before Hon. FRANK H. EASTERBROOK, Hon. DANIEL A. MANION, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted Ricki McClendon of (1) conspiracy to distribute cocaine and to possess cocaine with the intention of distributing it (in violation of 21 U.S.C. §§ 841(a)(1) & 846); and (2) using or carrying a firearm during and in relation to a drug trafficking offense (in violation of 18 U.S.C. § 924(c)(2)). McClendon appeals from his conspiracy conviction and the sentence imposed. We affirm.
 
 
 2
 In the summer of 1994, the Lake County (Indiana) Drug Task Force had seized about three kilograms of cocaine in a drug bust. The agents told one of their confidential informants to put out a story that he had some cocaine for sale at a cheap price because it had been stolen. The informant eventually told the agents that a "Ricki"--who turned out to be the defendant, McClendon--wanted to purchase kilogram quantities of cocaine, but he wanted to buy in Indianapolis. So the Task Force asked Indianapolis DEA agents for help. The informant arranged to sell McClendon the drugs on August 31, 1994, at a hotel near the airport. The agents rented two rooms (one for the sale and one for surveillance) and spread numerous agents outside the hotel. The agents used video and audio recording equipment, and the informant wore a wire. A police officer named Jones was tagged to act as the informant's accomplice. The agents had the three kilograms of cocaine with them in case McClendon wanted to see the drugs before closing the deal.
 
 
 3
 Everything pretty much went according to plan. McClendon arrived at the hotel in a maroon van driven by another man (who turned out to be Frank Larkins); two other men followed in a tan van. McClendon met with the informant in the hotel room. McClendon mentioned that he was accompanied by others who had weapons. The informant followed McClendon to the maroon van, where McClendon displayed a large amount of cash.
 
 
 4
 After going back into the room, Jones and the informant told McClendon that they would sell the cocaine for $11,000 per kilogram (which was about half the going rate). McClendon said that he only had enough money to buy two kilograms at that price, but because it was so cheap, he suggested that he could quickly sell the two kilograms and then use the profits to purchase two more. McClendon suggested that the informant and Jones should come with him (bringing the additional cocaine) to where he had lined up a buyer so that after he sold the first two kilograms, he could quickly buy the additional kilograms from Jones and the informant. Jones and the informant said they would go along with that scheme. The informant and McClendon went back outside and the agents arrested McClendon, Larkins, and the two men in the tan van. A search of the maroon van turned up over $25,000 in cash, two loaded handguns, and a digital scale. The maroon van belonged to Larkins; the tan van belonged to McClendon's father.
 
 
 5
 The U.S. attorney eventually dismissed the charges against the two men from the tan van. Larkins was tried and convicted of conspiracy and carrying a firearm. We affirmed his convictions and sentence in United States v. Larkins, 83 F.3d 162 (7th Cir.1996). In a separate trial, McClendon was convicted and then sentenced to 211 months for the conspiracy conviction and 60 months for the firearm conviction, which by statute had to be served consecutively. On appeal, McClendon raises numerous issues.
 
 
 6
 First, McClendon challenges the sufficiency of the evidence underlying the conspiracy conviction. Because the jury convicted McClendon, we take the evidence in the light most favorable to the prosecution and will reverse only if no reasonable trier of fact could have found McClendon guilty beyond a reasonable doubt. Larkins, 83 F.3d at 165; United States v. Richardson, 130 F.3d 765, 772 (7th Cir.1997). A conspiracy is a confederation of at least two persons with the purpose of jointly committing a criminal act. Larkins, 83 F.3d at 165-66. To convict McClendon of conspiracy, the government had to produce substantial evidence, which could have been circumstantial, that (1) the conspiracy existed and (2) McClendon knowingly agreed to join it. Id.; Richardson, 130 F.3d at 772. There was ample evidence to convict McClendon of the conspiracy charge: McClendon did not come alone; in fact, he told the informant that he had brought the other men with him and that they were armed. And McClendon suggested that the informant and Jones accompany him to immediately sell the two kilograms of cocaine so that the could use the profits to finance the purchase of a further two kilograms. This was sufficient evidence to prove that the conspiracy existed and that McClendon was a part of it.
 
 
 7
 Next, McClendon attacks the district court's refusal to give the jury his proffered buyer-seller instruction. "The defendant in a criminal case is entitled to have the jury consider any theory of the defense which is supported by law and which has some foundation in the evidence, however tenuous." United States v. Douglas, 818 F.2d 1317, 1320 (7th Cir.1987) (internal quotations and alterations omitted). In Douglas we established a four-part analysis to determine if a defendant is entitled to an instruction on a proffered defense:
 
 
 8
 the defendant proposes a correct statement of the law; the defendant's theory is supported by the evidence; the defendant's theory of defense is not part of the charge; and the failure to include an instruction on the defendant's theory would deny the defendant a fair trial.
 
 
 9
 818 F.2d at 1320-21. Here McClendon's argument clearly fails because no evidence supported his shallow defense that he was a mere purchaser of cocaine for his own use. McClendon did not testify at trial and did not offer any other evidence as to what his intentions might have been. The only evidence in the record regarding McClendon's intentions indicated that he wanted to immediately purchase two kilograms of cocaine, an amount obviously too large for his personal use. He also wanted to quickly sell it to purchase two more kilograms. Even if McClendon was planning a major overdose as an individual user as opposed to being a distributor, he would not resell the drugs. Because McClendon offered nothing to contradict this evidence, the district court not only did not err in refusing the instruction, it more likely would have been an abuse of discretion to have given it.
 
 
 10
 McClendon also complains that the district court erroneously admitted testimony regarding various out-of-court statements over his hearsay objections. McClendon merely cites to those portions of the transcript in which the statements were admitted without proffering an argument as to why the admission was error. We will address his argument, although it is probably waived. See Luddington v. Indiana Bell Tele. Co., 966 F.2d 225, 230 (7th Cir.1992) ("if an appellant fails to make a minimally complete and comprehensible argument for each of his claims, he loses regardless of the merits of those claims as they might have appeared on a fuller presentation."). McClendon's complaint is that officers were permitted to testify to what the confidential informant and a fellow officer had told them. McClendon's argument has no merit because these out-of-court statements were not admitted for the truth of what was said and so were not hearsay. See Fed.R.Evid. 801(c) (hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted"). Rather, the statements were admitted for the limited purpose of explaining why the testifying officer, after hearing what they said, offered to help in the investigation by providing manpower and technical assistance. This has little or nothing to do with whether what he heard was actually true. See United States v. Lazcano, 881 F.2d 402, 407 (7th Cir.1989) (officer's relaying out-of-court statement not hearsay if it was "for the limited purpose of explaining why a government investigation was undertaken"); also Miles v. Burris, 54 F.3d 284, 288 n. 1 (7th Cir.1995) (quoting Lazcano ). And the court adequately instructed the jury as to the limited purpose for which the statements could be used. For example, the following was one of the court's many instructions that demonstrate there was no error.
 
 
 11
 So [the AUSA] is offering this not to prove that whatever [another officer] said was true but only why this witness [Agent Cates] responded to it or acted in the way he did following that conversation. So you may hear this information but only for the limited purpose, and that is to know why this particular witness went to a particular place or did a particular thing and is not admitted for the truth of what this other person who's not on the stand is saying. So you may consider it only for that limited purpose.
 
 
 12
 (Trial Trans. Vol. I pp. 67-68). The court then asked McClendon's counsel if he wanted any further instruction given to the jury in this regard and counsel responded "None, Your Honor." The district court's handling of this was completely correct, and McClendon's assignment of error is wholly without merit.
 
 
 13
 McClendon also complains that he was unable to inform the jury that the charges against two of his co-conspirators were dropped. McClendon again develops no argument regarding this issue. He does not even cite to a portion of the record, much less any authority. This time, we decline to search the record to see if a meritorious argument could have been constructed. See Luddington, supra. And we note that the district court's Jury Instruction 35, which admonished the jury not to speculate as to why the other co-conspirators were not present, is consistent with the reasoning of our prior decisions. See United States v. Barrientos, 758 F.2d 1152, 1156 (7th Cir.1985) (where co-defendant's absence occurred in mid-trial).
 
 
 14
 Finally, McClendon objects to the sentence he received because he asserts that the district court was biased against him, but he points to no specific error in sentencing. We have reviewed the entire sentencing proceeding and the other portions of the record that McClendon claims show the district court's bias, and we see no indication of bias whatsoever. Again, McClendon's argument is without merit.
 
 
 15
 McClendon's convictions and sentence are AFFIRMED.