**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Daniel E. HEGGE, Defendant– Appellant.**

**No. 98–4232.**

United States Court of Appeals, Seventh Circuit.

Argued June 10, 1999.

Decided Nov. 5, 1999.

Timothy M. O'Shea (argued), Peggy A. Lautenschlager, Office of U.S. Attorney, Madison, WI, for plaintiff–appellee.

Peter J. Morin (argued), Menomonie, WI, for defendant–appellant.

Before WOOD, JR., RIPPLE, and MANION, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Daniel E. Hegge was charged by information with two counts of bank fraud in

violation of 18 U.S.C. § 1344. Hegge pled guilty pursuant to a plea agreement to one count of bank fraud. Following his guilty plea, Hegge was sentenced to twenty-seven months imprisonment followed by five years of supervised release and was ordered to pay $883,583.00 in restitution. Hegge appeals, arguing that he was entitled to a downward departure under commentary note 7(b) to § 2F1.1 of the United States Sentencing Guidelines, U.S.S.G. § 2F1.1 cmt. n. 7(b).

In the fall of 1994, Hegge opened Hegge Midwest Equipment Company ("Hegge Midwest") to sell equipment to farmers in northwest Wisconsin. Hegge used the Northwest Savings Bank ("Northwest") in Amery, Wisconsin as his primary lender. Initially, Northwest loaned Hegge money on a piece-by-piece basis. Hegge used the loans to purchase new equipment and repaid the bank when each piece was sold. After Hegge built credibility with the bank, Northwest extended Hegge a line of credit secured by his inventory and accounts receivable. Under the line of credit arrangement, Hegge provided Northwest with a list of collateral securing the loan on a monthly basis, and Northwest conducted periodic inventories of the equipment at the company.

Due to a high demand for rental farm equipment, Hegge opened a second business, Clear Lake Equipment Company ("Clear Lake"), through which Hegge rented machinery to local farmers. Clear Lake did not actually own any equipment; instead, it leased equipment from the Stearns County National Bank ("Stearns") in Albany, Minnesota. Under Hegge's agreement with Stearns, Hegge would find equipment at other implement dealers. Stearns would then purchase the equipment and lease it to Hegge for rental to local farmers. Hegge, however, with the help of friends in the implement business, set up a system to short-circuit his agreement with Stearns. Hegge would sell Hegge Midwest equipment to a third-party implement dealer for resale to Stearns.

The third-party dealer would give Hegge the purchase price received from Stearns minus a percentage. Stearns would then lease the equipment to Clear Lake. These transactions were on paper only; throughout all the dealings, the machinery in question never moved from Hegge's lot. Following the sales, Hegge did not remit the money he received to Northwest, and he continued to hold out the equipment sold to Stearns as inventory to Northwest both on his collateral statements and when bank representatives personally inspected his lot.

In August 1996, Hegge's scheme fell apart. Hegge was hospitalized with a nervous breakdown, and his business checking account at Northwest became overdrawn by $84,000.00. As a result of the overdraft, Northwest declared their loans to Hegge to be in default and began to take action to liquidate Hegge's assets. Meanwhile, Stearns, learning of the default, went to Hegge's business and removed all of the pieces of equipment that it owned, leaving behind approximately $65,000.00 worth of equipment. Years of civil litigation followed in which Northwest and Stearns sought to establish which bank had the priority security interest in the equipment. Ultimately, an auction was held with Northwest receiving $122,881.00 of the proceeds and Stearns receiving $71,000.00.

On September 9, 1998, Hegge was charged with two counts of bank fraud in violation of 18 U.S.C. § 1344. On September 28, 1998, Hegge pled guilty pursuant to a plea agreement to one count of bank fraud. The presentence report concluded that the relevant conduct loss for sentencing purposes was $873,058.00. The parties disputed this amount, but by December 4, 1998, Hegge and the United States agreed that the relevant conduct loss was $883,583.00. Additionally, in a December 4, 1998 sentencing memorandum, the government pointed out that a downward departure is available under U.S.S.G. § 2F1.1 cmt. n. 7(b) for cases in which the

amount of the loss overstates the defendant's conduct, but argued that a downward departure was not warranted in Hegge's case. Hegge did not mention a note 7(b) downward departure in his pre-sentencing submissions or at his December 7, 1998 sentencing. Hegge did not object to the district court's determination at sentencing that the relevant conduct loss was $883,583.00 and that Hegge's guideline range called for twenty-one to twenty-seven months imprisonment. The district court sentenced Hegge to twenty-seven months imprisonment followed by five years of supervised release and ordered him to pay $883,583.00 in restitution. Hegge filed this timely appeal.

█ Under U.S.S.G. § 2F1.1, a defendant's offense level is based in part on the dollar amount of the loss. Commentary note 7(b) to § 2F1.1 applies to fraudulent loan application cases and provides: "When the loss determined above significantly understates or overstates the seriousness of the defendant's conduct, an upward or downward departure may be warranted." As Hegge's attorney stated at oral argument, Hegge does not challenge the district court's valuation of the loss but rather argues that the district court erred in failing to depart downward under § 2F1.1 cmt. n. 7(b) because the amount of the loss as determined by the court overstates the seriousness of his conduct. The district court's decision to deny a downward departure under § 2F1.1 cmt. n. 7(b) is a discretionary decision. *United States v. Saunders*, 129 F.3d 925, 933 (7th Cir.1997).

█ It is well-established that this court lacks jurisdiction to review a district court's discretionary refusal to grant a downward departure. *United States v. Mattison*, 153 F.3d 406, 413 (7th Cir.1998); *Saunders*, 129 F.3d at 933; *United States v. Winters*, 117 F.3d 346, 348 (7th Cir. 1997); *United States v. Larkins*, 83 F.3d 162, 168 (7th Cir.1996). We may, however, review the denial of a downward departure in cases in which the district court bases its decision on a legal conclusion that it lacked authority to depart downward. *Larkins*, 83 F.3d at 168. We begin our analysis with the presumption "that the district court knew that it had authority to depart downward and simply exercised its discretion not to do so." *Id.* The defendant bears the burden of rebutting this presumption. *Id.* In the present case, Hegge fails to offer any evidence to rebut this presumption. In his brief, Hegge asserts that the district court had been advised by the government that a downward departure under § 2F1.1 cmt. n. 7(b) was available. Furthermore, in response to questioning at oral argument, Hegge's attorney conceded that the district judge knew he had the ability to depart downward under § 2F1.1 cmt. n. 7(b) based on the government's December 4, 1998 sentencing memorandum which the district judge stated he had reviewed along with other sentencing documents. Therefore, Hegge argues only that, given the facts of the case, the district judge erred in exercising his discretion not to grant a downward departure. This claim is not reviewable. *See Saunders*, 129 F.3d at 933. Hegge's appeal is DISMISSED.